IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH GIRVAN, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:21-cv-1176 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| M. ADAMS, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM**

Pending before the Court[1] is a Petition for a Writ of Habeas Corpus (ECF No. 6) filed by

Keith Girvan ("Petitioner") under 28 U.S.C. § 2254. Petitioner challenges the judgment of sentence

imposed on him by the Court of Common Pleas of Clarion County on December 18, 2019, at

criminal docket number CP-16-CR-159-2019. For the reasons set forth below, the Court will deny

the petition and will deny a certificate of appealability.

**I.     Relevant Background**

Petitioner was convicted at a jury trial of two counts each of aggravated assault, terroristic

threats, simple assault, recklessly endangering another person, and harassment. The Superior Court

of Pennsylvania summarized the facts adduced at trial as follows:

> On March 13, 2019,[[2]] [Petitioner] telephoned his parents, Robert and Carol Girvan
> and told them, "I hate you. I want to kill you." N.T. Jury Trial, 11/25/19, at 25. Less
> than one-half hour later, he entered their home carrying a knife, repeated his threats,
> and proceeded to punch his seventy-nine-year-old father multiple times. When
> [Petitioner's] mother tried to prevent him from hitting his father, [Petitioner]
> punched and shoved her, causing her to fall against a coffee table. [Petitioner]
> returned to punching his father, and then left the home.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States
Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] This date appears to be a typo; the record reflects that the incident occurred on March 19, 2019. *See*, *e.g.*, ECF No.
10-2 at 13.

The victims called 911, and Pennsylvania State Trooper Kyle Freeman responded. He took photographs of Mr. and Mrs. Girvan's injuries and the scene within their home, all of which were introduced at trial. *Id.* at 41. Mr. Girvan went to the emergency room at a local hospital, where he was treated for a broken nose and received stitches for lacerations around his eyes.

(ECF No. 19-8 at 14).

Petitioner was sentenced to an aggregate term of 60 to 120 months' imprisonment followed by 48 months' probation. A fine was also imposed for the summary harassment charges.

Petitioner appealed, but the Superior Court of Pennsylvania affirmed his judgment of sentence on July 14, 2021. *Commonwealth v. Girvan*, 260 A.3d 145 (Pa. Super. 2021) (unpublished memorandum); (ECF No. 19-8 at 13-23.) Petitioner did not file a timely petition for allowance of appeal in the Supreme Court of Pennsylvania.

This petition for writ of habeas corpus was timely filed. (ECF No. 6.) Petitioner raises three grounds for relief: (1) violation of his Sixth Amendment right to counsel at trial and on appeal; (2) violation of his Eighth Amendment right to be free from cruel and unusual punishment; and (3) violation of his Fourteenth Amendment due process rights.[3]

Respondents filed an answer (ECF No. 19) and Petitioner filed a reply. (ECF No. 26.) The petition is ripe for consideration.[4]

---

[3] Petitioner lists a fourth ground entitled "Immediate Public Importance - Technology," in which he asserts that "the PA and U.S. judicial systems need to decide the extent to which they will enable or utilize digital/interactive technology." (ECF No. 6 at 10.) No cognizable claim is discernable here; neither is the relevance to Petitioner's case clear. Petitioner also provides supporting facts for a "Ground 5" in an attachment to the petition, (ECF No. 6-1 at 2), but no fifth ground is listed. These facts concern the filing of trial transcripts as a discovery violation. These facts would not support a claim for habeas relief.

[4] Petitioner has filed an interlocutory appeal from an order of this Court denying Petitioner's Motion for an Expedited Evidentiary Hearing and a motion for appointment of counsel. (ECF No. 30.) Although that appeal is pending, this Court is not divested of jurisdiction because the appeal is from an order that is not immediately appealable. *See Petri v. Erie Cnty. Child. & Youth*, 2021 WL 5822397 (3d Cir. Dec. 7, 201) (citing Fed. R. Civ. P. 54(b), and *Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir. 1985)).

**II.      Discussion**

A.      Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to

prisoners in custody pursuant to a state court judgment. This statute permits a federal court to grant

a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of

the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not

cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden

to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858

F.3d 841, 848-49 (3d Cir. 2017).

B.      Standard of Review

In 1996, Congress made important amendments to the federal habeas statutes with the

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among

other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner

applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions

are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citing

*Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard

against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary

error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal

quotations and citation omitted).

A finding of fact made by a state court has always been afforded considerable deference in

a federal habeas proceeding. AEDPA continued that deference and mandates that "a determination

of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).

Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

AEDPA also put into place a new standard of review, which is codified at 28 U.S.C. § 2254(d). In this Court, it applies "to any claim that was adjudicated on the merits" by the Superior Court of Pennsylvania and prohibits a federal habeas court from granting relief unless the petitioner established that the Superior Court's "adjudication of the claim":

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court (here, the Superior Court) made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g.*, *Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

Subsection § 2254(d)(1) applies to questions of law and mixed questions of law and fact. A state-court adjudication is "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States" § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams*, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406. A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Williams*, 529 U.S. at 406. Thus, the issue in most federal habeas cases is whether the adjudication by the state court survives review under § 2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 281 (3d Cir. 2016) (en banc) (quoting *Williams*, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. *Id.* He must show that it "'was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must prove that the Superior Court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer, supra*, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013).[5] "[A] state court decision is based on an 'unreasonable determination of the facts' if the

---

[5] Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert*, 387 F.3d at 235. The Court of Appeals has instructed that when it applies, § 2254(d)(2) provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.*

5

state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis*, 834 F.3d at 281 (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. *Wood*, 558 U.S at 301 (quoting *Collins*, 546 U.S. at 341-42).

C.      Exhaustion and Procedural Default

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Additionally, and importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement.

6

*O'Sullivan*, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court. *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. To summarize, it provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural rules (such as, for example, the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

A petitioner may avoid the default of a claim by showing "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"*Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original).

A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is

also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S.

298, 316 (1995). "To be credible, such a claim requires petitioner to support his allegations of

constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."

*Id.* at 324. In only the extraordinary case will a petitioner be able to establish a "fundamental

miscarriage of justice."

> D.     Petitioner's Claims

> 1.     Ground One: Right to Counsel

Petitioner first claims that he was deprived of his Sixth Amendment right to counsel at trial

and on appeal. (ECF No. 6 at 5-7.) He asserts:

> The Clarion County Assistant Public Defender was incompetent and could only
> represent me at the preliminary hearing. My repeated attempts to secure private
> counsel have been prevented/denied. PA Superior Court's July 14 memorandum
> makes several false statements regarding appellate counsel and the Grazier
> colloqu[]y did not satisfy requirements of Pa.R.Crim. 120 or prove waiver of
> counsel.

*Id.* at 5.

> a.     Counsel at trial level

The Superior Court of Pennsylvania summarized Petitioner's history of representation at

the trial court level as follows:

> [Petitioner] was charged with two counts each of aggravated assault, terroristic
> threats, simple assault, recklessly endangering another person, and harassment. He
> was represented initially by Assistant Public Defender Cory Ricci. Following a
> request from [Petitioner] that Attorney Ricci withdraw, and a subsequent
> "aggressive voicemail" from [Petitioner], Attorney Ricci filed a motion to
> withdraw as counsel. In response, [Petitioner] detailed in a writing the reasons why
> he did not want the public defender's office to represent him. Thereafter, the court
> entered an order stating that it would conduct a hearing and receive testimony from
> [Petitioner] on July 10, 2019, regarding his reasons for wanting to dismiss his
> attorney and his understanding of the procedure if he retained private counsel or
> represented himself.

On July 10, 2019, [Petitioner] reiterated his refusal to be represented by appointed counsel or any member of the public defender's office. He also declined to enter a plea to aggravated assault. After a waiver-of-counsel colloquy, the Court entered an order permitting the public defender to withdraw and reciting therein that [Petitioner] had decided to represent himself and rejected the plea offer of the Commonwealth.

Following a conference on July 19, 2019, the attorney for the Commonwealth sent [Petitioner] a copy of its criminal conference report. The assistant district attorney represented therein that he spoke with [Petitioner] on July 16, 2019, and that [Petitioner] was unwilling to plead to felony assault and would be requesting a jury trial. [Petitioner] had advised the assistant district attorney that he wished to be represented by Alan Dershowitz, Esquire, but complained that he was being denied access to the attorney. The Commonwealth provided [Petitioner] with Mr. Dershowitz's address.

The matter came up before the special plea court on August 28, 2019. [Petitioner] represented himself, rejected the Commonwealth's offer, and requested a jury trial. A pretrial conference was scheduled for September 6, 2019, with jury selection set to begin on September 16, 2019. The court expressed its intent to appoint standby counsel for [Petitioner].

On September 5, 2019, Attorney John Lackatos entered his appearance on [Petitioner's] behalf. Counsel filed a motion to continue the pretrial conference, which was granted, and the pretrial conference was rescheduled for November 1, 2019. At the conference, [Petitioner] filed a *pro se* motion for dismissal. In the motion, he averred that private counsel had misled him, and that the delay of trial for two months violated his right to speedy trial pursuant to Rule 600. [Petitioner] contended that he would not have consented to Attorney Lackatos's representation had he known that a continuance was necessary and that he would remain longer in jail. He asked for a change of venue, complained about access to the law library, and insisted that he had snapped due to his family situation. The trial court denied the motion but scheduled a hearing on the Rule 600 motion for November 21, 2019. The trial court granted Attorney Lackatos permission to withdraw and stated that [Petitioner] "wants to represent himself at trial. Order, 11/1/19. Thereafter, a jury trial was scheduled for November 25, 2019, and Michael Marshall, Esquire, was appointed to serve as standby counsel. When trial commenced, [Petitioner] represented himself with Attorney Marshall available to answer his questions.

(ECF No. 19-8 at 14-17) (footnotes omitted).

The Superior Court then addressed Petitioner's appellate claim that he was denied counsel at the trial court level as follows:

The following principles inform our review. It is beyond cavil that a criminal defendant has a constitutional right to counsel. He also has a constitutional right, necessarily implied under the Sixth Amendment of the U.S. Constitution, to represent himself at trial. *Faretta v. California*, 422 U.S. 806 (1975). Similarly, Pa. Const. art. I, § 9 affords to a person accused of a criminal offense the right to counsel. *Commonwealth v. Lucarelli*, 971 A.2d 1173, 1175 (Pa. 2009). The right is not absolute, however. While defendants are entitled to choose their own counsel, they are not permitted to insist upon a particular counsel, or to unreasonably clog the administration of criminal justice. *Id.* In *Lucarelli*, the Court found waiver as the defendant knowingly and intelligently refused appointed counsel in favor of private counsel but took no steps to secure private counsel. *Id.* at 1179 (quoting *Commonwealth v. Szuchon*, 484 A.2d 1365, 1376 (Pa. 1984) (finding waiver where defendant insisted on particular counsel who was unavailable or by insisting on private counsel but failing to take any steps to retain an attorney).

Our High Court cautioned in *Commonwealth v. Blakeney*, 946 A.2d 645, 655 (Pa. 2008), that before a defendant will be permitted to proceed *pro se*, he or she must knowingly, voluntarily, and intelligently waive the right to counsel. To ensure that a waiver is knowing, voluntary, and intelligent, our Supreme Court held in *Commonwealth v. Starr*, 664 A.2d 1326, 1335-36 (Pa. 1995), that the trial court must conduct a "probing colloquy," defined as "a searching and formal inquiry" as to whether the defendant is aware both of the right to counsel and of the significance and consequences of waiving that right. That waiver-of-counsel colloquy is codified in Pa.R.Crim.P. 121:

> (1) The defendant may waive the right to be represented by counsel.
>
> (2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:
>
>> (a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;
>>
>> (b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;
>>
>> (c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;
>>
>> (d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121.

The law is well settled that "[f]ailing to conduct an on-the-record colloquy pursuant to Rule 121(C) before allowing a defendant to proceed *pro se* constitutes reversible error." *Commonwealth v. Johnson*, 158 A.3d 117, 121 (Pa.Super. 2017). This Court added,

> waiver [cannot] be presumed where the record is silent. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.

*Id.* (quoting *Commonwealth v. Monica*, 597 A.2d 600, 603 (Pa. 1991)). The right is so important that we will raise the issue *sua sponte* where, as here, the defendant is not represented by counsel. *Johnson*, *supra* at 121.

Our review of the certified record, as supplemented, confirms that a proper waiver colloquy was conducted. Specifically, on July 10, 2019, the trial court conducted a waiver-of-counsel colloquy that comported in all respects with Rule 121. *See* N.T. Plea Hearing, 7/10/19, at 7-12. Hence, the certified record establishes that [Petitioner] "fully understood the ramifications of a decision to proceed *pro se* and the pitfalls associated with the lack of legal training." *Commonwealth v. Murphy*, 214 A.3d 675, 679 (Pa.Super. 2019) (quoting *Commonwealth v. Robinson*, 970 A.2d 455, 460 (Pa.Super. 2009) (*en banc*)). Thus, we find that [Petitioner] knowingly, intelligently, and voluntarily waived his right to counsel.

ECF No. 19-8 at 18-21.

In his petition, Petitioner asserts: "The Clarion County Assistant Public Defender was incompetent and could only represent me at the preliminary hearing. My repeated attempts to secure private counsel have been prevented/denied." (ECF No. 6 at 5.) In his Reply, he explains

further that the trial court "ordered" him "to proceed in forma pauperis using provocative language

and appointed standby counsel. (Nov. 1st and Jan 15th orders)."[6] (ECF No. 26 at 6.)

Petitioner presents no challenge whatsoever to the Superior Court's thorough analysis and

ruling. Instead, he essentially repeats the arguments he made to the Superior Court on direct appeal.

This is not an appropriate basis for habeas relief, and he is thus not entitled to any such relief on

this claim.

b.      <u>Appellate counsel</u>

As to counsel on Petitioner's appeal, the Superior Court explained:

> … [W]e remanded the record for a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998), to determine if [Petitioner] desired to proceed *pro se* on appeal, and if so, to ascertain whether his request to do so was knowing, voluntary, and intelligent. Following a hearing, the trial court entered an order finding that [Petitioner] understood that he had a right to an attorney on appeal, that [Petitioner] rejected the public defender, that [Petitioner] stated that he had the ability to hire an attorney, and that he would proceed *pro se*, and that [Petitioner] knowingly, voluntarily, and intelligently waived his right to appellate counsel. *See* Order, 3/19/20, at 1.

(ECF No. 19-8 at 13 n.1.)

The March 19, 2020, order entered by trial court following the *Grazier* hearing

provides:

> …[T]he court finds that [Petitioner] has knowingly, voluntarily and intelligently understood his right to be represented by an attorney. The court has offered to immediately appoint the Clarion County Public Defender to represent [Petitioner]

---

[6] The trial court entered two orders on November 1, 2019, following a pre-trial conference at which Petitioner informed the court that he did not want his appointed counsel, Attorney Lakatos, to represent him and that he wanted to proceed as his own counsel. (ECF No. 19-3 at 45; ECF No. 19-4 at 1-2.) These orders granted Attorney Lakatos leave to withdraw as counsel and stated that Petitioner was now self-represented but would be appointed standby counsel for trial. (*Id.*) The January 15, 2020, order states that Petitioner, who had previously been represented by a public defender, has filed an appeal. (ECF No. 19-5 at 15.) The trial court then states, "this court assumes there has been no substantial change in the financial condition of [Petitioner] and shall allow him to proceed in forma pauperis." (*Id.*)

12

in an appeal. [Petitioner] has stated directly that he does not want to be represented by the public defender.

[Petitioner] has stated multiple times today that he does have the ability to hire an attorney, and he has been precluded from making contact with and communication with private attorneys by the restrictions imposed at the jail. [Petitioner] has stated that he has the financial means to hire a private attorney, but he also states that his mother has prevented him from accessing the accounts in order to afford to hire a private attorney.

Upon conclusion of the Grazier Hearing, the court has determined that [Petitioner] has knowingly, voluntarily and intelligently waived his right to a free attorney through the office of the Clarion County Public Defender. Therefore, the court will not appoint the public defender to represent [Petitioner] at this time.

Pursuant to the Superior Court's order, [Petitioner] is now permitted to proceed pro se, and the court will provide all of the material of record necessary for the prosecution of the instant appeal.

[Petitioner] has stated he desires to be represented by a private attorney of his choosing, and [Petitioner] is permitted to continue to seek out and employ a private attorney. The court is not precluding him from doing so.

(ECF No. 19-7 at 15-16.)

Petitioner argues in his petition: "PA Superior Court's July 14 memorandum makes several false statements regarding appellate counsel and the Grazier colloquy did not satisfy requirements of Pa.R.Crim. 120 or prove waiver of counsel." ECF No. 6 at 5. In his Reply, Petitioner elaborates:

In the only colloquy held, Petitioner declined the Clarion County Public Defender's Office as appellate counsel. There were no pre trial colloquies, and the session failed to satisfy requirements for this issue in Pa Rules of Appellate Procedure. Petitioner's decision was based on information that Respondent, Erich Spessard, previously employed as Chief Clarion Public Defender[,] had resigned and joined the prosecuting District Attorney's office while Petitioner's case was progressing through Clarion County Court of Common Pleas. This conflict of interest caused distrust of the Public Defender's Office and Petitioner's decision to turn down the offer…Petitioner was not advised or warned to acquire counsel….

(ECF No. 26 at 5.)

Petitioner did not raise in state court a claim concerning the adequacy of his waiver of appellate counsel. He asserts that he did so in a petition for allowance of appeal filed in the

Supreme Court of Pennsylvania, (ECF No. 6 at 6); however, he did not timely file such a petition.

Because he is time-barred from raising this claim in state court now, it is procedurally defaulted.

In his Reply, in what may be construed as an attempt to overcome this default, Petitioner

offers what he characterizes as "evidence of factual innocence." (ECF No. 26 at 1.)[7] The evidence

upon which he relies is an "affidavit[8]" from his mother, Carol Girvan, in which she sets forth four

facts concerning the March 19, 2019, incident. (ECF No. 10.) Specifically, she denies that

Petitioner hit her; she denies communicating with Petitioner by phone on that day; she denies

seeing Petitioner holding a knife while punching his father; and she clarifies that she was in the

bedroom when Petitioner arrived that day. (*Id.*) To the extent Petitioner advances this "evidence"

to establish a miscarriage of justice that would overcome his default, he is incorrect.

---

[7] To the extent that Petitioner is raising a freestanding actual innocence claim based on this evidence (in addition to his gateway actual innocence claim discussed above) that claim is improperly raised but would be denied. In the Third Circuit, "[i]t has long been recognized that '[c]laims of actual innocence based on only newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *Albrecht v. Horn*, 485 F.3d 103, 121-22 (3d Cir. 2007). However, the Court of Appeals has acknowledged that the Supreme Court has yet to definitively resolve the issue. *Reeves v. Fayette Sci*, 897 F.3d 154, 160 n.4 (3d Cir. 2018). The Court of Appeals has further explained that to the extent freestanding actual innocence claims are cognizable, they must be "assessed under a more demanding standard [than a gateway actual innocence claim], since the petitioner's [freestanding] claim is that his conviction is constitutionally impermissible 'even if his conviction was the product of a fair trial[.]'" *Id.* (quoting *Schlup*, 513 U.S. at 316 and citing *House v. Bell*, 547 U.S. 518, 555 (2006)). If indeed a freestanding claim of actual innocence could be brought in a non-capital federal habeas case such as this one, and if it could be raised for the first time in a Reply, Petitioner has fallen short of offering the type of evidence of innocence that would entitle him to habeas relief on such a claim given that he has not satisfied the lesser (although still demanding) standard that applies to gateway actual innocence claims.

[8] This document is entitled "Affidavit in support of writ of Habeas Corpus," but it is not sworn. Further, it does not qualify as an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746, because it was not made under penalty of perjury. However, because the Court ultimately does not rely on this document for its disposition, it is not necessary to examine its bona fides.

"To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Carol Girvan testified at his trial. Specifically, she testified on direct examination that she was in the bedroom at the beginning of the incident and then saw Petitioner enter the house, go to her husband, and begin hitting her husband. (ECF No. 19-5 at 55-56). She tried to stop Petitioner by leaning against him, but he tried to get her "away." (*Id.* at 56.) Finally, she explained that the injuries she sustained during the incident came from a fall she sustained after she "got away" from Petitioner. (*Id.*) Petitioner did not cross examine her. (*Id.* at 57.)

For multiple reasons, even if the affidavit of Petitioner's mother is considered, it does not represent new evidence that would demonstrate a miscarriage of justice. First, its version of events is consistent with her trial testimony. Carol Girvan denies that Petitioner hit her, which is consistent with her trial testimony that he merely "tried to get her away," and confirms, as she testified at trial, that she was in the bedroom when Petitioner arrived that day.

Further, to the extent she provides additional facts in the affidavit, they are of little substance. For instance, she states that she did not communicate with Petitioner by phone on the day in question, confirming the evidence adduced at trial that Petitioner spoke to Robert Girvan by phone that day, not to his mother. Mrs. Girvan also states that she did not see Petitioner punching Robert Girvan with a knife in his hand.[9] She does not state that she saw Petitioner's hands and that they were empty. In short, her failure to observe a knife in her son's hand during a

---

[9] Robert Girvan testified that Petitioner had one or two knives in his hand during the incident. (ECF No. 19-5 at 44, 49.) Of note, when Petitioner cross examined his father on this point, he "asked" him: "I have a different memory of -- right here it says 'punching me with that knife in his hand.' I never had the knife in that hand." (*Id.* at 53.)

15

brief, violent altercation in which she and her husband were physically injured is of little probative value.

For these reasons, Petitioner has not demonstrated a miscarriage of justice such that his default of this issue is excused.

This Court need not resolve the more complex issue of procedural default, however, if it determines that Petitioner's claim has no merit, even under a *de novo* review. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (where analysis of procedural default is complex, the court may skip the issue and proceed to the merits). *See also* Brian R. Means, Federal Habeas Manual § 9B:5 (2019) ("[W]here the procedural default question is relatively complicated or when relief is due to be denied even if claims are not procedurally barred, a federal court is authorized to skip over the procedural default issue and proceed to deny the claim on the merits."). That course is ultimately followed here.

As to the merits of this claim, Petitioner asserts that the *Grazier* hearing was inadequate. He articulates only one specific reason for his claim: that he "was not advised or warned to acquire counsel." (ECF No. 26 at 5.) The state court was not required to advise or warn Petitioner to acquire counsel. Rather, the court was required to conduct a colloquy in accordance with Pa.R.Crim.P 121, the relevant parts of which are set forth in the Superior Court's analysis, *supra*. After it conducted the *Grazier* hearing in order to conduct the requisite colloquy, the state court found that Petitioner knowingly, voluntarily, and intelligently understood his right to be represented by an attorney and knowingly, voluntarily, and intelligently waived his right to a free attorney through the office of the Clarion County Public Defender. This Court is bound to presume the finding is correct as Petitioner has failed to produce clear and convincing evidence to refute it. Accordingly, the waiver of appellate counsel was adequate. Petitioner is not entitled to habeas relief on this ground.

For these reasons, the Court will deny relief on Ground One.

        2.        <u>Ground Two: Cruel and unusual punishment</u>

Petitioner next claims that the sentence imposed on him constitutes cruel and unusual punishment because it was imposed in violation of several Pennsylvania state sentencing guidelines. (ECF No. 6 at 7-8.) Specifically, he asserts that the sentencing court failed to consider all relevant factors and did not provide reasons for the sentencing or an opportunity for allocution. (*Id.* at 7.) He also claims that his prior record score was incorrectly calculated. (*Id.*)[10]

Although in his appellate brief to the Superior Court, Petitioner invoked the Eighth Amendment's prohibition against cruel and unusual punishment in connection with his sentencing claim, (ECF No. 24-3 at 37-38), the errors about which he complained concerned the discretionary aspects of his sentence. Thus, the court addressed the claim as such, and found it to be waived. Specifically, the court held:

> Finally, [Petitioner's] claim that his sentence is excessive fares no better. A claim of excessiveness is a discretionary sentencing claim. As this Court has explained,
>
>> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code[.]
>
> *Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa.Super. 2007) (citations omitted.[)]
>
> While [Petitioner] filed a timely notice of appeal, he failed to preserve his discretionary sentencing claim in a timely post-sentence motion or at sentencing. Furthermore, he failed to include in his appellate brief a Pa.R.A.P. 2119(f) statement explaining how he has raised a substantial question. Moreover, his bald allegation that his sentence was excessive does not raise a substantial question. *See Commonwealth v. Fisher*, 47 A.3d 155, 159 (Pa.Super. 2012) (finding no

---

[10] Petitioner also refers to being sentenced for aggravated assault instead attempted aggravated assault. (ECF No. 6 at 7.) It is not clear if this reference is part of his claim, nor is the basis for such a claim clear. Petitioner was convicted and sentenced on two counts of aggravated assault.

substantial question raised where appellant alleged that his sentence was excessive but did not allege what fundamental sentencing norm or sentencing code provision was potentially violated). Therefore, we may not reach [Petitioner's] discretionary sentencing claim. No relief is due.

(ECF No. 19-8 at 22-23.)

Petitioner cannot obtain habeas relief for this claim. As the Superior Court correctly found, the errors he raises are alleged defects in the state court's sentencing procedure and thus constitute state law claims. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984). As set forth above, errors of state law are not cognizable in a federal habeas proceeding. *Estelle*, 502 U.S. at 67-68. Further, generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual punishment under the Eighth Amendment. *Martinez v. Stridiron*, 538 Fed. Appx. 184, 191 (3d Cir. 2013) (citing *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011)). Petitioner does not allege that the sentence exceeds statutory limits. Accordingly, this ground for relief will be denied.

### 3.     Ground Three: Due process

In this claim, Petitioner lists multiple errors he alleges to have occurred at the trial and appellate levels. Specifically, he asserts:

> Robert Girvan committed unsworn falsification subject to Sections 4804 and 4906 of the PA Crimes Code. He changed his story, and contradicted his wife's statement. He also committed perjury responding the DA Drew Welsh's misleading prosecutorial misconduct. My objections to these false statements were overruled by a biased President Judge James Arner. Evidence of these crimes can be found in PA State Police Report 351077 and the trial transcript on record. James Arner illegally disregarded a violation of PA Rule of Criminal Procedure 600 stipulating a trial within 180 days as evidenced in an order dated   November 21, 2019. President Judge James Arner's abuse of power is in violation of Articles II and III of the U.S. Constitution: an investigation of James Arner by the PA Judicial Conduct Board is on file at No: 248-2019.
>
> The trial took place in an empty courtroom, an unlikely event if it were a public trial, and I was described as a "known actor" in PSP 351077. The Superior Court

of PA dismissed the case without the opportunity to present evidence or reargue in violation of PA Rules of Appellate Procedure 1113 in an order dated July 27, 2021.

(ECF No. 6-1 at 2.)

Petitioner did not raise a due process claim in state court. He asserts that he did so in a petition for allowance of appeal filed in the Supreme Court of Pennsylvania, (ECF No. 6 at 9); however, he did not timely file such a petition. Because he is time-barred from raising this claim in state court now, it is procedurally defaulted.

However, as with Ground One, this Court need not resolve the more complex issue of procedural default if it determines that Petitioner's claim has no merit, even under a *de novo* review. Although Petitioner invokes his due process rights under the United States Constitution, he does not develop a due process claim. Instead, he asserts three principal bases for this claim: (1) the trial court improperly admitted false testimony; (2) the trial court improperly denied his motion filed pursuant to Pa.R.Crim.P. 600; and (3) the appellate court violated its rules of procedure.[11] Petitioner is not entitled to habeas relief on any of these bases, all of which assert the state courts' violation of state procedural rules. As the Court of Appeals has explained, "[w]e can take no cognizance of non-constitutional harm … flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee." *Wells v. Petsock*, 941 F.2d 253 (3d Cir. 1991). Thus, even if this Court were to review

---

[11] Petitioner makes additional assertions in his Reply; to the extent that he is seeking to assert additional claims therein, he may not do so. A petitioner cannot raise new habeas claims in a Reply (formerly known as a Traverse) or in other subsequent filings. Fed. R. Governing § 2254 Cases 2(c)(1); LCvR 2254.B.2.b. *See also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for relief."). In addition, Rule 15 of the Federal Rules of Civil Procedure applies to habeas cases and Petitioner did not receive the required consent from the Respondents or leave to file an amendment to his petition from the Court. Fed.R.Civ.P. 15(a)(2).

these claims *de novo*, Petitioner would not be entitled to federal habeas relief on these state law claims.

This ground will be denied.

**III.    Certificate of Appealability**

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Petitioner has not done so. Thus, a certificate of appealability is denied with respect to his claims.

**IV.    Conclusion**

For these reasons the Court will deny the petition and will deny a certificate of appealability.

An appropriate Order follows.


Date:   April 5, 2024                                      /s/ Patricia L. Dodge
                                                                        PATRICIA L. DODGE
                                                                        United States Magistrate Judge